**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

ALLEN JORDAN BAISI,

               Plaintiff,

    v.

COLLEEN ELIZABETH BURKE, BRIJ MOHAN,
ZAIDA IRIS NDIFE, AND ANGELA MARIA
OWENS,

             Defendants.

Civil Case No. 18-cv-58

Honorable Elaine E. Bucklo

**PLAINTIFF'S OPPOSITION TO INDIVIDUAL FEDERAL**
**DEFENDANTS' MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ..................................................................................................................1

FACTS ..................................................................................................................................1

I.     Mr. Baisi Dislocates His Shoulder, Requiring Surgery ........................................2

II.    Mr. Baisi is Placed on Medical Hold Pending Completion of His Prescribed
Course of Physical Therapy .................................................................................2

III.   During the Course of His Prescribed Physical Therapy Treatment, Mr. Baisi Is
Suddenly Transferred Away From the Doctors and Physical Therapists Caring for
Him at MCC, Despite his Medical Hold ...............................................................3

IV.   Mr. Baisi Exhausts His Administrative Remedies ................................................5

RELEVANT LEGAL FRAMEWORK ..................................................................................5

I.     The Bivens Remedy ............................................................................................5

II.    First Amendment Claims Under Bivens ...............................................................8

III.   Eighth Amendment Claims Under Bivens .........................................................10

IV.   Section 1985 Conspiracy to Interfere with Civil Rights .....................................10

LEGAL STANDARD UPON MOTION TO DISMISS .......................................................11

ARGUMENT .....................................................................................................................12

I.     Mr. Baisi Exhausted His Administrative Remedies ...........................................13

II.    Mr. Baisi Brings Long-Established Bivens Claims that Should Proceed ............14

      A.   Mr. Baisi's Bivens Claims are Ordinary and Well-Established, Not Novel ............14

      B.   Even If Mr. Baisi's Claims Were Considered Novel, They Should Still
Proceed ...........................................................................................18

           1.   There Are No Alternative Avenues Of Relief For Mr. Baisi ..........................19

           2.   There Are No Special Factors that Would Counsel Hesitation ......................23

III.   Qualified Immunity Does Not Support Dismissal of Any of Mr. Baisi's Claims ............28

      A.   Mr. Baisi has Plausibly and Sufficiently Pled Claims for Retaliation,
Deliberate Indifference, and Conspiracy .................................................29

           1.   Mr. Baisi Sufficiently and Plausibly Pled his Retaliation Claim By
Setting Forth the Chronology of Events .......................................30

           2.   Mr. Baisi's Complaint Adequately Alleges Deliberate Indifference
And Conspiracy ..........................................................................33

      B.   Qualified Immunity Does Not Apply To Any of Mr. Baisi's Claims ....................35

IV.   CONCLUSION ..................................................................................................37

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbasi v. Ziglar,*
   137 S.Ct. 1843 (2017) ................................................................. *passim*

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ................................................ *passim*

*Babcock v. White,*
   102 F.3d 267 (7th Cir. 1996) ...............................................................28

*Baisi v. Cordova,*
   No. 1:16-CV-002661 (N.D. Ill. 2016) ............................................ *passim*

*Baloun v. Williams,*
   No. 00-C-7584, 2002 WL 31426647 (N.D. Ill. Oct. 25, 2002) .........................11, 36

*Banowitz v. State Exchange Bank,*
   600 F. Supp. 1466 (N.D. Ill. 1985) ........................................................30

*Beach v. Smith,*
   150 F. Supp. 3d 41 (D. Me. 2015) ..........................................................21

*Behrens v. Pelletier,*
   516 U.S. 299 (1996) ...............................................................................35

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2004) ...............................................................................11

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,*
   403 U.S. 388 (1971) ......................................................................... *passim*

*Black v. Lane,*
   22 F.3d 1395 (7th Cir. 1994) ...............................................................30

*Bolling v. Sharpe,*
   347 U.S. 497 (1954) .........................................................................6, 25

*Booth v. Churner,*
   532 U.S. 731 (2001) ...............................................................................13

*Bridges v. Gilbert,*
   557 F.3d 541 (7th Cir. 2009) ...........................................................30, 32

*Brucar v. Rubin,*
   638 F.2d 987 (7th Cir. 1980) ...........................................................12, 34

*Burns v. Warden, USP Beaumont,*
  482 F. App'x. 414 (11th Cir. 2012) ............................................................................9

*Carlson v. Green,*
  446 U.S. 14 (1980) .......................................................................................... *passim*

*Chappell v. Wallace,*
  462 U.S. 296 (1983) .........................................................................................24

*City of Los Angeles v. Lyons,*
  461 U.S. 95 (1983) .......................................................................................20, 21

*Corr. Servs. Corp. v. Malesko,*
  534 U.S. 61 (2001) .........................................................................6, 24, 26, 27

*Eastes v. ACS Human Servs., LLC,*
  No. 1:09-CV-203, 2010 WL 300427 (N.D. Ind. Jan. 21, 2010) ........................11, 12

*Elrod v. Burns,*
  427 U.S. 347 (1976) ........................................................................................23

*Engel v. Buchan,*
  710 F.3d 698 (7th Cir. 2013) ......................................................................... *passim*

*Fairley v. Andrews,*
  300 F. Supp. 2d 660 (N.D. Ill. 2004) ..................................................................37

*Flast v. Cohen,*
  392 U.S. 83 (1968) ..........................................................................................17

*Gonzalez v. Feinerman,*
  663 F.3d 311 (7th Cir. 2011) ............................................................................33

*Green v. Wexford Health Sources,*
  No. 12 C 50130, 2013 WL 139883 (N.D. Ill. Jan. 10, 2013) ...........................13, 14

*Griffin v. Breckenridge,*
  403 U.S. 88 (1971) ..........................................................................................10

*Harris v. Fleming,*
  839 F.2d 1232 (7th Cir. 1988) ...........................................................................31

*Hartman v. Bd. of Tr. of Cmty. Coll. Dist. No. 508, Cook Cty., Ill.,*
  4 F.3d 465 (7th Cir. 1993) ............................................................................11, 36

*Hartman v. Moore,*
  547 U.S. 250 (2006) ........................................................................................ *passim*

*Herron v. Meyer,*
    820 F.3d 860 (7th Cir. 2016) ................................................................9, 17

*Hill v. Lappin,*
    630 F.3d 468 (6th Cir. 2010) ...................................................................9

*Keller v. Walton,*
    No. 316-CV-0056-JPG, 2017 WL 5713379 (S.D. Ill. Nov. 28, 2017) ..............9, 35

*Lipsey v. United States,*
    879 F.3d 249 (7th Cir. 2018) ...................................................................20

*Loumiet v. United States,*
    292 F. Supp. 3d 222 (D.D.C. 2017) .......................................................9, 17

*Mack v. Warden Loretto FCI,*
    839 F.3d 286 (3d Cir. 2016) .....................................................................9

*Marks v. United States,*
    430 U.S. 188 (1977) .................................................................................18

*McGowan v. Hulick,*
    612 F.3d 636 (7th Cir. 2010) ...................................................................33

*Michigan v. Bay Mills Indian Cmty.,*
    134 S.Ct. 2024 (2014) ..............................................................................18

*Minneci v. Pollard,*
    565 U.S. 118 (2012) ..................................................................6, 21, 24, 26

*Murphy v. Lane,*
    833 F.2d 106 (7th Cir. 1987) ........................................................... *passim*

*Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.,*
    184 F.3d 623 (7th Cir. 1999) ...................................................................36

*Petties v. Carter,*
    795 F.3d 688 (7th Cir. 2015) ...................................................................36

*Quinones v. Szorc,*
    771 F.2d 289 (7th Cir. 1985) .........................................................11, 12, 34

*Rasho v. Elyea,*
    856 F.3d 469 (7th Cir. 2017) .........................................................33, 35, 36

*Reichle v. Howards,*
    566 U.S. 658 (2012) .................................................................................16

*Rhoden v. Thompson*,
No. 96-C-999, 1999 WL 182341 (N.D. Ill. Mar. 24, 1999) .................................31, 32, 35, 36

*Riley v. Kolitwenzew*,
526 F. App'x 653 (7th Cir. 2013) ...........................................................................................33

*Robinson v. U.S.*,
80 F. App'x. 494 (7th Cir. 2003) .......................................................................................17, 22

*Sherman v. Four Cty. Counseling Ctr.*,
987 F.2d 397 (7th Cir. 1993) ..................................................................................................35

*Shields v. Ill. Dept. of Corr.*,
746 F.3d 782 (7th Cir. 2014) ....................................................................................................3

*Strong v. David*,
297 F.3d 646 (7th Cir. 2002) ............................................................................................13, 14

*Swanson v. Citibank, N.A.*,
614 F.3d 400 (7th Cir. 2010) ............................................................................................11, 29

*Traffic Tech, Inc. v. Krieter*,
No. 14-CV-07528, 2015 WL 9259544 (N.D. Ill. Dec. 18, 2015)....................................20, 21

*United States v. Stanley*,
483 U.S. 669 (1987)................................................................................................................24

*Walker v. Thompson*,
288 F.3d 1005 (7th Cir. 2002) ..........................................................................................11, 12

**Statutes**

5 U.S.C. § 702.........................................................................................................................19

8 U.S.C. § 1226a.....................................................................................................................23

18 U.S.C. §§ 3621–3626.........................................................................................................20

28 U.S.C. § 2680.....................................................................................................................20

34 U.S.C. §§ 30301–30309.....................................................................................................26

42 U.S.C. § 233(a) ..................................................................................................................27

42 U.S.C. § 1983.................................................................................................6, 10, 25, 26

42 U.S.C. § 1985 ..............................................................................................................*passim*

42 U.S.C. § 1997a...................................................................................................................25

42 U.S.C. § 1997e ..................................................................................................13, 26

**Other Authorities**

28 C.F.R. § 542 ............................................................................................................13

Fed. R. Civ. P. 8(a)(2) ...........................................................................................11, 17

Karen Petroski, *Iqbal and Interpretation*,
    39 FLA. ST. U. L. REV 417 (2012) ...........................................................................17

## INTRODUCTION

The Individual Federal Defendant's Motion to Dismiss ("Motion") repeatedly mischaracterizes the Complaint as an attack on the Bureau of Prisons' policy of using of private prisons, all as part of an effort to change the law in the Seventh Circuit and thereby insulate federal employees from lawsuits based on violations of inmates' First and Eighth Amendment rights. *See* Individual Fed. Defs.' Mot. to Dismiss, ECF No. 25, May 30, 2018 (cited herein as "Defs.' Mot. to Dismiss"). In actuality, the Complaint does not challenge any Bureau of Prisons ("BOP") policy, nor does it take issue with the private prison system in general. Rather, Mr. Baisi's Complaint states simply that he was improperly and purposefully transferred away from his physical therapists in retaliation for filing an earlier lawsuit, which caused a harmful disruption of his medical care. If proven, these allegations would entitle Mr. Baisi to relief under the well-established law of the Seventh Circuit. Mr. Baisi's claims are properly and sufficiently pled, and accordingly, dismissal at this early stage would be inappropriate.

## FACTS

While housed at the Metropolitan Correctional Center in Chicago, Illinois ("MCC"), Mr. Baisi suffered a complete dislocation of his shoulder, which was exacerbated by a delay in his treatment. *See* Compl. ¶¶ 12–49, ECF No. 1, Jan. 3, 2018 (cited herein as "Compl."). In connection with the delay in treatment, Mr. Baisi filed a *pro se* action against certain members of the prison staff, including Defendants Owens and Ndife, which he later voluntarily dismissed after it came to his attention that he had not exhausted his administrative remedies. *Baisi v. Cordova,* No. 1:16-CV-002661 (N.D. Ill. 2016) (*"Baisi I"*). The case presently before this Court concerns separate but related allegations that Mr. Baisi was on a medical hold pending completion of his physical therapy sessions, but that he was transferred

to another facility in retaliation for *Baisi I*, thereby disrupting Mr. Baisi's medical care and causing him permanent harm.[1]

## I. Mr. Baisi Dislocates His Shoulder, Requiring Surgery

Late in the evening of January 1, 2016, Mr. Baisi fell while attempting to descend from his assigned bunk bed at the MCC. Compl. ¶ 12. Mr. Baisi suffered a total dislocation of his shoulder, which was visible to MCC staff that examined him that night and the following day. Compl. ¶¶ 13–30. Mr. Baisi described his pain as a "10 [out of] 10," yet MCC staff refused to provide him with access to medical care, and his shoulder was not relocated until more than twelve hours after his fall. Compl. ¶ 37. After orthopedic surgeon Dr. Chandraskhar Sompalli ("Dr. Sompalli") examined Mr. Baisi's shoulder at Thorek Memorial Hospital, he determined that Mr. Baisi's shoulder had not healed properly and might require surgery. Compl. ¶ 42. After two months of not receiving further treatment for his injury, Mr. Baisi filed *Baisi I*, which he later voluntarily dismissed solely because he had not exhausted his administrative remedies. Following Mr. Baisi's first filing, he underwent surgery on or around May 26, 2016. Compl. ¶ 50.

## II. Mr. Baisi is Placed on Medical Hold Pending Completion of His Prescribed Course of Physical Therapy

On or around June 3, 2016, Mr. Baisi met with Dr. Sompalli, who explained that Mr. Baisi faced an extended path to recovery and that physical therapy would be a necessary and critical component of recovering mobility and strength in his shoulder. Compl. ¶¶ 54–55. In accordance with Dr. Sompalli's recommendations, MCC Clinical Director Dr. Brij Mohan ("Defendant Mohan"), prescribed six weeks of physical therapy and informed Mr. Baisi that he would be placed on a medical hold until his treatment

---

[1] Defendants attempt to argue that Mr. Baisi is suing them over the lack of medical care that Mr. Baisi received after being transferred to a private facility; however, Mr. Baisi argues only that Defendants transferred him in retaliation for *Baisi I*, and were deliberately indifferent to Mr. Baisi's serious medical needs when they transferred him while on a medical hold.

was completed.[2]  Compl. ¶¶ 53–56.  Defendant Mohan instructed that Mr. Baisi should be "[a]llowed to have a two piece uniform suit till full recovery of shoulder surgery" through October 31, 2016.  Compl. at ¶ 51.

Mr. Baisi underwent his first physical therapy session on or around June 23, 2016.  Compl. ¶ 57. Mr. Baisi's physical therapist noted, "[Patient] WOULD BENEFIT FROM CONTINUED SKILLED OCCUPATIONAL THERAPY," and recommended an extended plan of treatment that included therapy sessions "2-3X/WEEK" for "8WKS AND RE-ASSESSMENT."  Compl. ¶ 57.  Within days of his first physical therapy session, undersigned counsel for Mr. Baisi met with him at the MCC to discuss *Baisi I.* Compl. ¶ 47.

On or around June 27, 2016, Defendant Mohan approved a modified version of the therapist's recommended plan of treatment for Mr. Baisi and prescribed him "weekly PT for 8 wks."  Compl. ¶ 58. Mr. Baisi had received three sessions of physical therapy by the time he met again with Defendant Mohan on July 14, 2016, at which point Defendant Mohan prescribed additional physical therapy.  Compl. ¶ 62. One week before Mr. Baisi met with Defendant Mohan, undersigned counsel attended a status hearing for Mr. Baisi regarding *Baisi I.*  Compl. ¶ 48.

### III.  During the Course of His Prescribed Physical Therapy Treatment, Mr. Baisi Is Suddenly Transferred Away From the Doctors and Physical Therapists Caring for Him at MCC, Despite his Medical Hold

Very soon after Defendant Mohan prescribed Mr. Baisi additional physical therapy treatment, which would have also extended the medical hold, MCC Nurse Colleen Burke ("Defendant Burke"), a subordinate of Defendant Mohan, completed an Inmate Intra-System Transfer form authorizing Mr. Baisi's transfer to Great Plains Correctional Facility (the "GEO Facility"), operated by a private

---

[2] A medical hold mandates that an inmate not be transferred until he or she has completed his or her prescribed treatments.  *See Shields v. Illinois Dept. of Corrections*, 746 F.3d 782, 788 (7th Cir. 2014) (explaining that "[a] medical hold prevents a prisoner from being moved to a different prison during medical treatment, to ensure continuity of care").

contractor called the GEO Group, Inc. (the "GEO Group"). Compl. ¶ 63. Defendant Burke completed the transfer form despite the fact that Mr. Baisi was on a medical hold until after he completed his physical therapy. Compl. ¶ 53. Defendant Burke listed "shoulder (pain in joint, shoulder region)" as a "current health problem" and noted Defendant Mohan's order that Mr. Baisi should be allowed a two-piece uniform. Compl. ¶ 65. Defendant Burke also stated that Mr. Baisi was to receive his prescription strength Ibuprofen (800 MG tabs). Despite documenting these details regarding Mr. Baisi's shoulder condition, Defendant Burke notably did *not* list that Mr. Baisi was receiving and had been prescribed additional physical therapy sessions. Compl. ¶ 65.

After Mr. Baisi was informed of his imminent transfer, he urgently sent written electronic messages to Defendant Mohan, MCC Health Administrator Zaida Ndife ("Defendant Ndife"), and MCC Warden Angela Owens ("Defendant Owens"), in which Mr. Baisi expressly raised concerns that the transfer would disrupt his continuity of his care and would result in further harm. Compl. ¶¶ 67–69; Defs.' Mot. to Dismiss at Hoyos Decl. Ex. 1–2 ("I believe that [the transfer] will interfere with the treatment plan here in Chicago of physical therapy . . . . [The GEO Facility] won[']t be able to provide physical therapy to me which will have long[-]term consequences with my shoulder recovery."). Defendants Mohan, Ndife, and Owens never responded to Mr. Baisi's concerns. Compl. ¶ 70. Mr. Baisi was handcuffed with his shoulder behind his back throughout the plane and automobile trip from MCC to a federal transfer facility in Oklahoma City, painfully positioning and immobilizing his shoulder. Compl. ¶ 76. Mr. Baisi did not receive any physical therapy sessions during the several weeks that he was at the federal transfer facility in Oklahoma City. Compl. ¶ 77. Mr. Baisi was later transferred to the GEO Facility, and he has not received any physical therapy sessions there either. Compl. ¶¶ 78–82. The lack of treatment has caused Mr. Baisi permanent damage to his shoulder, including decreased mobility, weakness, and acute and chronic pain. Compl. ¶¶ 92–97.

## IV.    Mr. Baisi Exhausts His Administrative Remedies

Following the transfer from MCC in contravention of his medical hold, Mr. Baisi requested administrative relief through the local, regional, and central BOP offices.  *See* Compl. ¶¶ 98–105; Defs.' Mot. to Dismiss at Hoyos Decl. Ex. 3–5.  Mr. Baisi now brings four claims against Defendants: a First Amendment "retaliation" claim and an Eighth Amendment "deliberate indifference" claim brought pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) ("*Bivens*"), as well as two related conspiracy claims brought pursuant to 42 U.S.C. § 1985.  Compl. ¶¶ 107–144.

## RELEVANT LEGAL FRAMEWORK[3]

## I.    The *Bivens* Remedy

The Supreme Court decided *Bivens* in 1971.  The question posed to the Court was whether a Fourth Amendment violation "by a federal agent acting under color of his authority g[ave] rise to a cause of action for damages consequent upon [the agent's] unconstitutional conduct."  *Bivens*, 403 U.S. at 389.  The Court held that it did.  *Id.*  In so ruling, the Court recognized that "the Fourth Amendment does not in so many words provide for its enforcement by an award of damages," but further noted that "where legal rights have been invaded . . . federal courts may use any available remedy to make good the wrong done."  *Id.* at 396 (quoting *Bell v. Hood*, 327 U.S. 678, 684 (1946)).  The Court also explained that it lacked any "explicit congressional declaration that persons injured by a federal officer's violation of the Fourth Amendment *may not* recover money damages from the agents . . . ."  *Id.* at 397 (emphasis added).

---

[3] Defendants describe at length the Attorney General's authority to dictate inmate-housing decisions, BOP's authority to contract with private companies to house federal inmates, and the authority of Congress and BOP to oversee these private companies.  *See* Defs.' Mot. to Dismiss at 14–19.  Mr. Baisi nowhere challenges the authority of the BOP to move inmates or the constitutionality of the private-prison scheme.  Mr. Baisi challenges the specific motive for his transfer and the disruption it caused his prescribed course of physical therapy treatment.  Accordingly, the BOP's decision to contract with privately run prisons and the Motion's lengthy background on the subject is entirely irrelevant in this litigation.

"The very essence of civil liberty," the Court concluded, "certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury." *Id.* (quoting *Marbury v. Madison*, 1 Cranch 137, 163 (1803)).[4]

Forty-seven years later, *Bivens* remains good law. The Supreme Court has, from time to time, clarified and refined the scope of *Bivens*. For instance, in *Carlson v. Green,* 446 U.S. 14 (1980), the Court held that a *Bivens* damages remedy was available for Eighth Amendment violations, notwithstanding that the allegations at issue—in that case involving deliberate indifference by prison officials to a prisoner's serious medical need—also could have supported a suit against the United States under the Federal Tort Claims Act ("FTCA"). Similarly, the Court later clarified, in *Correctional Services Corp. v. Malesko*, 534 U.S. 61 (2001), that no *Bivens* remedy was available for suits against private entities. *See also Minneci v. Pollard*, 565 U.S. 118 (2012) (declining to extend *Bivens* to create a remedy for Eighth Amendment violations by prison guards at a private prison). Regardless, the Court has never overruled the key holding of *Bivens*—that for certain constitutional violations by federal officials, victims "have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right." *Carlson,* 446 U.S. at 18. For this reason, courts, parties, and commentators refer to *Bivens* as "the federal analog to suits brought against state officials under. . . 42 U.S.C. § 1983." *See, e.g.*, *Hartman v. Moore,* 547 U.S. 250, 254 n.2 (2006). Much like a § 1983 action,

---

[4] The Defendants in this case take issue with the *Bivens* Court's implication of a right of action against federal officials absent Congressional approval. *See* Defs.' Mot. to Dismiss at 10–11 ("Congress has also never enacted a counterpart to 42 U.S.C. § 1983, explicitly permitting constitutional claims against *federal* officials for money damages."). Though true, the Court's authority to impose duties on federal officials consistent with those that Congress or the Constitution place on state officials is not in dispute in this case. Moreover, the idea that citizens would enjoy greater protection from the states than from the federal government for identical constitutional violations is a non-starter. *See, e.g.*, *Bolling v. Sharpe*, 347 U.S. 497, 500 (1954) ("In view of our decision that the Constitution prohibits the states from maintaining racially segregated public schools, it would be unthinkable that the same Constitution would impose a lesser duty on the Federal Government.").

a plaintiff may bring a *Bivens* action if (1) the defendant deprived the plaintiff of a right secured by the Constitution, for which a *Bivens* cause of action is available; and (2) the defendant did so while acting under the color of federal law. *Carlson*, 446 U.S. at 18.

Since 1980, the Supreme Court has outlined a two-step framework for analyzing whether a *Bivens* cause of action should be extended to new contexts; that is, beyond the constitutional rights for which the Supreme Court has either previously recognized or disclaimed a *Bivens* remedy. *Engel v. Buchan*, 710 F.3d 698, 703–04 (7th Cir. 2013). First, courts examine whether there are any alternative remedies or avenues for judicial or administrative redress, such that an implied cause of action is not necessary. *Id.* Second, courts consider whether "special factors counsel[] hesitation before authorizing a new kind of federal litigation." *Id.*

The Supreme Court's most recent decision, in *Abbasi v. Ziglar,* 137 S.Ct. 1843 (2017), reaffirmed this two-step approach for evaluating extensions of *Bivens*. The *Abbasi* case involved the detention of illegal aliens immediately following the September 11, 2001 terrorist attacks. *Abbasi,* 137 S.Ct. at 1852–54. The detainees, who were held for several months following the attacks, filed suit against John Ashcroft (then-Attorney General of the United States), Robert Mueller (then-Director of the Federal Bureau of Investigation), James Ziglar (then-Commissioner of the Immigration and Naturalization Service), and two wardens at the detention facility. *Id.* Their complaint included various Fifth Amendment claims brought pursuant to *Bivens*, a Fourth Amendment claim brought pursuant to *Bivens*, and a conspiracy claim under 42 USC § 1985(3). *Id.* The four-Justice majority opinion[5] ultimately concluded that *Bivens* should not be extended to provide relief for the purportedly unlawful detention because the detainees essentially sought a vehicle for altering the Executive Branch's national security policies following the September 11 terrorist attacks, particularly through their claims against

---

[5] Justices Sotomayor, Kagan, and Gorsuch did not participate in the discussion or decision.

Ashcroft, Mueller, and Ziglar. *Id.* at 1861–62. The Court noted that these "high-level policies" attracted the attention of Congress of the time, which responded with the USA PATRIOT Act, but Congress did not see fit to provide remedies for unlawfully detained individuals. *Id.* at 1862. Moreover, the Court stated that habeas corpus would have provided a quicker and more direct route to freeing the detainees than *Bivens*, further reinforcing that an implied damages remedy was not necessary. *Id.* at 1863. The Court warned that federal courts should adopt a "more cautious course before finding implied causes of action [under *Bivens*]," but it did not alter the fundamental analytical *Bivens* framework. *Id.* at 1855–57.[6]

## II.    First Amendment Claims Under *Bivens*

Pre-*Abbasi*, federal courts widely accepted the viability of First Amendment retaliation claims brought pursuant to *Bivens*. On at least two occasions, the Supreme Court has assumed the viability of a retaliation claim under *Bivens*. In *Hartman v. Moore,* the Court directly stated:

> Official reprisal for protected speech "offends the Constitution [because] it threatens to inhibit exercise of the protected right," . . . and the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out . . . . *[W]e have held that retaliation is subject to recovery as the but-for cause of official action offending the Constitution . . . .When the vengeful officer is federal, he is subject to an action for damages on the authority of* **Bivens**.

547 U.S. at 256 (citations omitted and emphasis added). More recently, in the Supreme Court's landmark decision on pleading standards in *Ashcroft v. Iqbal*, the Court assumed that a First Amendment claim was actionable under *Bivens*. *See* 556 U.S. 662, 675 (2009) (assuming the validity of a First Amendment

---

[6] The Court in *Abbasi* also did not suggest that intervening legislation passed since *Bivens*, unrelated to the September 11, 2001 terrorist attacks, precluded the authorization of a *Bivens* remedy altogether. *Contra* Defs.' Mot. to Dismiss at 11–14 (discussing extensively various statutes including the Civil Rights of Institutionalized Persons Act and the Prison Rape Elimination Act).

*Bivens* action but dismissing the case based on the plaintiff's failure to meet the pleadings standard).

Prior to *Abbasi*, the Seventh Circuit had established that First Amendment retaliation claims exist under

*Bivens*. *See, e.g.*, *Herron v. Meyer*, 820 F.3d 860, 863 (7th Cir. 2016) (concluding that any time "a price"

is attached to protected speech, a First Amendment claim exists). Indeed, the existence of such a claim

was commonly recognized across sister circuits as well. *See, e.g.*, *Mack v. Warden Loretto FCI*, 839

F.3d 286, 297 (3d Cir. 2016); *Burns v. Warden, USP Beaumont*, 482 F. App'x. 414 (11th Cir. 2012); *Hill*

*v. Lappin*, 630 F.3d 468, 474 (6th Cir. 2010).

    *Abbasi* did not overturn the hundreds of First Amendment *Bivens* claims in federal courts, it did

not foreclose such claims in the future, and it did not even specifically speak to such claims. Rather, the

four-Justice opinion cautioned against extending *Bivens* claims to new contexts. *Abbasi*, 137 S. Ct. at

1848. Following the *Abbasi* decision, courts in the Seventh Circuit have concluded that *Abbasi* does not

automatically preclude *Bivens* claims based on the First Amendment. For instance, in *Robinson v.*

*Morris*, the Southern District of Illinois stated:

> The Court is aware of the Supreme Court's recent decision in
> [*Abbasi*] . . . . However, the Seventh Circuit has long recognized
> the viability of a claim by a federal prisoner for retaliation in
> violation of the First Amendment.

No. 18-CV-0164-JPG, 2018 WL 2164336, at *2 (S.D. Ill. May 10, 2018); *see also Keller v. Walton*, No.

316-CV-0056-JPG, 2017 WL 5713379 (S.D. Ill. Nov. 28, 2017) (declining to hold that *Abbasi* precludes

the expansion of *Bivens* liability in a case involving retaliation and deliberate indifference claims).

Beyond the Seventh Circuit, other courts have refused to limit *Bivens* remedies for the violation of First

Amendment rights post-*Abbasi*. *See Loumiet v. United States*, 292 F. Supp. 3d 222, 229 (D.D.C. 2017)

("[T]he Court finds unpersuasive Individual Defendants' argument to the effect that, after *Abbasi*, a

district court may no longer rely on circuit court precedent recognizing a *Bivens* cause of action in a

context that has not expressly been recognized (or expressly rejected) by the Supreme Court . . . . [T]his

Court is of the view that *Abbasi* should not require relitigating the 'new context' question for every *Bivens* action recognized by circuits but not (yet) by the Supreme Court . . . .").

## III.   Eighth Amendment Claims Under *Bivens*

There is no dispute over the validity of an Eighth Amendment deliberate indifference claim against federal officials under *Bivens*. In its *Carlson* decision, the Supreme Court confronted the issue of whether a *Bivens* remedy should be available to a plaintiff who filed suit on behalf of the estate of her deceased son, who was denied medical care while in federal prison. *Carlson*, 446 U.S. at 16 n.1. The Court concluded that *Bivens* extended to Eighth Amendment claims based on a "failure to provide adequate medical treatment." *Abbasi*, 137 S.Ct. at 1855. In *Abbasi*, far from abrogating or overruling *Carlson*, the Court reaffirmed and applied it. *See Abbasi*, 137 S.Ct. at 1864–65 (applying *Carlson* to the plaintiffs' claims against a warden and stating that "[t]he Court has long made clear the standard for claims alleging failure to provide medical treatment to a prisoner—'deliberate indifference to serious medical needs'").

## IV.   Section 1985 Conspiracy to Interfere with Civil Rights

Section 1985 was enacted by Congress to provide a private right of action to any party who suffers a loss of civil rights, or who is deterred from pursuing the due course of justice, because of a conspiracy against that party. 42 U.S.C. § 1985(2)–(3). Section 1985 has a much broader reach than § 1983 and *Bivens* as it "does not require state action but [also] reaches private conspiracies . . . that are aimed at invidiously discriminatory deprivation of the equal enjoyment of rights secured by all law." *Griffin v. Breckenridge*, 403 U.S. 88, 88–89 (1971). Since Congress passed § 1985 as part of the Ku Klux Klan Act of 1871, along with § 1983, claims brought pursuant to § 1985 are not *Bivens* actions. *See Griffin*, 403 U.S. at 92. The only potentially relevant limiting factor to a § 1985(3) claim is the intracorporate-conspiracy doctrine. In *Abbasi*, the Supreme Court did not decide whether the intracorporate-conspiracy doctrine applies to § 1985(3) actions, stating, that "[n]othing in this opinion

should be interpreted as either approving or disapproving the intracorporate-conspiracy doctrine's application in the context of an alleged § 1985(3) violation." *Abbasi*, 137 S. Ct. at 1868. While the Seventh Circuit has held that the intracorporate-conspiracy doctrine does apply to § 1985(3) actions, the doctrine does not apply to individuals who are motivated by personal bias or some other personal prejudice "unconnected to the [entity's] official business." *See Hartman v. Bd. of Tr. of Cmty. Coll. Dist. No. 508, Cook Cty., Ill.*, 4 F.3d 465, 470 (7th Cir. 1993); *Baloun v. Williams*, No. 00-C-7584, 2002 WL 31426647, at *12 (N.D. Ill. Oct. 25, 2002).

## LEGAL STANDARD UPON MOTION TO DISMISS

The Federal Rules of Civil Procedure simply require that a plaintiff's complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2004) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). At the motion to dismiss stage, the plaintiff's claims for relief must only be "plausible on its face." *See Engel*, 710 F.3d at 709 (quoting *Twombly*, 550 U.S. at 570). While "[p]urely legal conclusions are insufficient," *id.* (citing *Iqbal*, 556 U.S. at 678), the Seventh Circuit has stated that a plaintiff must merely provide "enough details about the subject-matter of the case to present a story that holds together," *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). In ruling on a motion to dismiss, "the court will ask itself *could* these things have happened, not *did* they happen." *Id.* (emphasis in original).

When pleading a conspiracy, "it is enough . . . merely to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with." *Eastes v. ACS Human Servs., LLC*, No. 1:09-CV-203, 2010 WL 300427, at *3 (N.D. Ind. Jan. 21, 2010) (quoting *Walker v. Thompson,* 288 F.3d 1005, 1007 (7th Cir. 2002)). To survive a motion to dismiss for a conspiracy claim, a plaintiff must only "plead sufficient facts from which a conspiracy can be inferred." *Eastes,* 2010 WL 300427, at *3 (quoting *Quinones v. Szorc*, 771 F.2d 289, 291 (7th Cir. 1985)). "To find otherwise would

11

require the plaintiff to know the intricacies of a conspiracy before conducting discovery, an unrealistic and unfair requirement." *Id.; see also Walker*, 288 F.3d at 1008 (concluding that plaintiffs need not plead the overt act giving rise to the conspiracy); *Quinones*, 771 F.2d at 291 ("The very nature of a conspiracy obscures most, if not all, information about the alleged conspirators' agreement . . . ."); *Brucar v. Rubin*, 638 F.2d 987, 993 (7th Cir. 1980) ("Conspiracies are ordinarily clandestine, so that proof of them will often be by purely circumstantial evidence.").

## ARGUMENT

Mr. Baisi properly and sufficiently stated *Bivens* claims for retaliation under the First Amendment and deliberate indifference under the Eighth Amendment, and related conspiracy claims pursuant to 42 U.S.C. § 1985(2)–(3). Defendants' Motion sets forth three arguments: (A) that Mr. Baisi supposedly failed to exhaust his administrative remedies, *see* Defs.' Mot. to Dismiss at 19–20; (B) that the Supreme Court's decision in *Abbasi* implicitly overturned decades of First Amendment-based *Bivens* cases and rendered Mr. Baisi's claims as "novel", *see* Defs.' Mot. to Dismiss at 20–39; and (C) that qualified immunity precludes relief for the violations of Mr. Baisi's rights, *see* Defs.' Mot. to Dismiss at 40–49. Each of these arguments fails. As stated in Mr. Baisi's Complaint and as revealed in the Motion itself, Mr. Baisi carefully and properly exhausted his administrative remedies, the *Abbasi* decision did not overrule *Bivens* or its progeny, and Mr. Baisi has satisfied the pleading standard for his claims of retaliation, deliberate indifference, and conspiracy. Defendants' attempts to block Mr. Baisi from reaching the discovery necessary to substantiate the allegations in his Complaint should therefore be denied.[7]

---

[7] Notably, this case does not concern the propriety "of designating an inmate with [certain] medical needs to a facility run by a private contractor," *contra* Defs.' Mot. to Dismiss at 9–10, nor does it involve a challenge to the authority of the Attorney General or BOP to make inmate-housing decisions, *contra* Defs.' Mot. to Dismiss at 15–16.

I.    **Mr. Baisi Exhausted His Administrative Remedies**

As alleged in Mr. Baisi's Complaint, Mr. Baisi "timely submitted a request for administrative relief on or around July 28, 2016, which was received by a BOP official on or around August 2, 2016." Compl. ¶ 98.  As noted in documentation attached by the Defendants to their own Motion, Mr. Baisi's request for administrative relief stated that "[i]n retaliation for pursuing legal action . . . I was transferred from Chicago to Oklahoma despite a medical hold . . . ."  Defs.' Mot. to Dismiss at Hoyos Decl. Ex. 3.  The request went on to assert that the transfer "disrupted and will continue to disrupt my access to physical therapy. . . ."  Defs.' Mot. to Dismiss at Hoyos Decl. Ex. 3.  Following the BOP's denial of Mr. Baisi's request, he timely appealed to BOP's regional office, and, after the regional office's denial, to BOP's central office.  Compl. ¶¶ 100–105.  At both levels, Mr. Baisi asserted that the transfer was "in retaliation for [his] lawsuit against [BOP officials]" and "delayed" his physical therapy.  Defs.' Mot. to Dismiss at Hoyos Decl. Ex. 4.  In his appeal to BOP's central office, Mr. Baisi even pointed BOP to evidence of retaliation and deliberate indifference, providing a timeline of his filing of *Baisi I* and his sudden transfer, along with a detailed description of how his "PT [was] seriously disrupted by the transfer."  Defs.' Mot. to Dismiss at Hoyos Decl. Ex. 5.

Neither the Prison Litigation Reform Act (the "PLRA") nor the relevant regulations require that Mr. Baisi do anything more to exhaust his administrative remedies.  *See* 42 U.S.C. § 1997e; 28 C.F.R. § 542 *et seq*.  The Seventh Circuit has confirmed that "no administrative system may demand that the prisoner specify each remedy later sought in litigation—for *Booth v. Churner*, 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001), holds that § 1997e(a) requires each prisoner to exhaust a *process* and not a *remedy*."  *Strong v. David*, 297 F.3d 646, 649–50 (7th Cir. 2002) (emphasis in original).  Consequently, "the grievant need not lay out the facts, articulate legal theories, or demand particular relief.  All the grievance need do is object intelligibly to some asserted shortcoming."  *Green v. Wexford Health Sources*, No. 12 C 50130, 2013 WL 139883, at *4 (N.D. Ill. Jan. 10, 2013) (quoting *Strong*, 297 F.3d at

13

650).  As numerous courts have recognized, the central purpose of the exhaustion requirement "is to give prison administrators prompt notice of problems, so that they may be corrected internally . . . ."  *Id.* (citations omitted).

Defendants' argument thus demonstrates a basic misunderstanding of the applicable law.  In a single throwaway paragraph, Defendants assert that Mr. Baisi never "raised any 'deliberate indifference' allegations at the local or regional level, or *ever* alleged 'conspiracy' on the part of BOP employees. . . ."  Defs.' Mot. to Dismiss at 19–20.  Defendants cite a single Seventh Circuit case for the proposition that a district court "may dismiss a complaint if the existence of a valid affirmative defense . . . is so plain from the face of the complaint that the suit can be regarding as frivolous."  Defs.' Mot. to Dismiss at 20.  Yet both Mr. Baisi's Complaint and the Motion itself show that his filings contained allegations of deliberate indifference related to the delay and disruption of his physical therapy, and asserted that multiple BOP officials had worked in conjunction to transfer him despite his medical hold.  *See* Compl. ¶¶ 99–105; Defs.' Mot. to Dismiss at Hoyos Decl. Ex. 3–5.  Here, it is manifestly inaccurate to claim that Mr. Baisi failed to provide notice regarding the retaliatory motive for his transfer, the disruption and delay in his medical care, and the fact that more than one individual BOP official was involved in his transfer.  *See* Compl. ¶¶ 99–105; Defs.' Mot. to Dismiss at Hoyos Decl. Ex. 3–5.  Defendants' argument is factually inaccurate and contemplates an extreme interpretation of the exhaustion requirement that is unworkable, draconian, and contrary to clearly established law.  *See Strong*, 297 F.3d at 649–50.

## II.     Mr. Baisi Brings Long-Established *Bivens* Claims that Should Proceed

### A.     Mr. Baisi's *Bivens* Claims are Ordinary and Well-Established, Not Novel

Mr. Baisi's First Amendment retaliation and Eighth Amendment deliberate indifference claims follow over forty years of precedent that federal courts have created since *Bivens* was decided.  The four-Justice opinion in *Abbasi* noted that a suit will "present a new *Bivens* context" if the suit "differ[s] in a

meaningful way" from the previous cases that the Court has decided. *Abbasi*, 137 S.Ct. at 1860. Neither of Mr. Baisi's *Bivens* claims differ in any meaningful way.

As an initial matter, the Court has already sanctioned *Bivens* remedies for Eighth Amendment deliberate indifference claims involving federal officials, most notably in *Carlson*. In *Carlson*, the plaintiffs brought claims on behalf of their deceased son, who had died in federal custody. *Carlson*, 446 U.S. at 16 n.1 (1980). The plaintiffs alleged that the defendants maintained a "gross[ly] inadequa[te]" medical facility at a federal correctional center and kept the decedent in that facility despite warnings about the "seriousness of [the decedent's] chronic asthmatic condition." *Id.* Similarly, Mr. Baisi alleges that he was improperly transferred from MCC by the Defendants even though they knew that such a transfer would at a minimum disrupt and/or delay his medical treatment, and Mr. Baisi expressly raised those concerns to them. Compl. ¶¶ 69, 129–40. Mr. Baisi's suit does not "differ in a meaningful way" from *Carlson*. *Abbasi*, 137 S.Ct. at 1860. The operative facts are the same in both cases: (1) inadequate access to medical care, (2) that defendants had been apprised of, and (3) deliberate indifference shown by those defendants.

Similarly, the Court has already strongly suggested in *Hartman v. Moore* that *Bivens* remedies for First Amendment retaliation claims exist. The Court in *Hartman* held that a plaintiff who brought FTCA and *Bivens* claims based on First Amendment violations in a retaliatory-prosecution action "must plead and show the absence of probable cause for pressing the underlying criminal charges." *Hartman*, 547 U.S. at 257. Consequently, the Court had to answer whether retaliation claims were viable in the first place, to which it stated: "[W]e have held that retaliation is subject to recovery as the but-for cause of official action offending the Constitution . . . . When the vengeful officer is federal, he is subject to an action for damages on the authority of *Bivens*." *Hartman*, 547 U.S. at 256 (citations omitted). Just three years later, the Court issued its landmark ruling on pleading standards in *Ashcroft v. Iqbal*, which

provided the Court with another occasion to discuss whether First Amendment claims were viable under *Bivens*. There, the Court "assume[d], without deciding, that [the plaintiff's] First Amendment claim [was] actionable under *Bivens*," and stated that "*Hartman* concerned the elements a plaintiff 'must plead and prove in order to win' a First Amendment retaliation claim." *Iqbal*, 556 U.S. at 673–75 (citations omitted).

Nevertheless, against the backdrop of *Hartman*, *Iqbal*, and decades of circuit-level cases, Defendants assert that Mr. Baisi's retaliation and deliberate indifference claims are entirely novel *Bivens* actions. *See* Defs.' Mot. to Dismiss at 22–25. Defendants admit that the analysis of whether a case presents a new context must look to "the Supreme Court's own decisions implying private rights of action," but then it largely disregards the similarities between Mr. Baisi's deliberate indifference claim and the claim at issue in *Carlson*. Defs.' Mot. to Dismiss at 22. Moreover, Defendants attempt to dismiss *Hartman* in a footnote, stating that the case "assumed the availability of a First Amendment claim . . . without implying one and so has no bearing on the analysis." Defs.' Mot. to Dismiss at 23 n.1. But the Defendants' argument is overly simplistic. First, the Court in *Abbasi* noted three cases, including *Carlson*, where it had "approved of an implied damages remedy under the Constitution," *Abbasi*, 137 S. Ct. at 1855, but the Court stopped short of mandating that litigants confine their analysis to those three cases. In addition, the *Hartman* opinion goes well beyond simply "assum[ing] the availability of a First Amendment claim." Defs.' Mot. to Dismiss at 22. Rather, the Court stated in unambiguous terms, without any caveat or uncertainty: "[W]e have held that retaliation is subject to recovery as the but-for cause of official action offending the Constitution . . . . on the authority of *Bivens*." *Hartman*, 547 U.S. at 256 (citations omitted).[8]

---

[8] The Motion suggests that *Hartman* and *Reichle v. Howards*, 566 U.S. 658 (2012) somehow establish that *Bivens* conclusively does not extend to the First Amendment. Defs.' Mot. to Dismiss at 23 n.31. Yet both of those cases only serve to highlight that the Supreme Court has

Later statements by the Court reinforce this interpretation of *Hartman*. In *Iqbal*, the Court explained that *Hartman* identified "the elements a plaintiff 'must plead and prove in order to win' a First Amendment retaliation claim." *Iqbal*, 556 U.S. at 673 (citations omitted). It would be beyond curious for the Court to issue a landmark ruling on pleading standards in a case involving a claim that did not exist as a matter of law.[9] *Cf. Flast v. Cohen*, 392 U.S. 83, 96 (1968) ("[T]he oldest and most consistent thread in the federal law of justiciability is that the federal courts will not give advisory opinions." (citations omitted)). The Court's assumption in *Iqbal*—that First Amendment claims are viable—thus further reinforces *Hartman*'s commentary on the availability of *Bivens* actions based on the First Amendment. Courts in the Seventh Circuit and beyond have considered and rejected Defendants' proposition that well-established claims like Mr. Baisi's should be considered "novel" in the wake of *Abbasi*. *See, e.g.*, *Robinson*, 2018 WL 2164336, at *2; *Loumiet*, 292 F. Supp. 3d 222. Although these decisions are not binding on the Court, they confirm the longstanding position of the Supreme Court and Seventh Circuit—that First Amendment retaliation claims are viable. *See, e.g.*, *Herron*, 820 F.3d at 863 (concluding that any time "a price" is attached to protected speech, a First Amendment claim exists).

In reality, the Defendants' Motion is only superficially about Mr. Baisi's claims. The underlying broader aim of the Motion—for which the government took nearly 50 full pages to brief—is to leverage the narrow opinion of just four Justices in *Abbasi* in hopes of creating favorable law in the Seventh

---

long assumed the availability of such *Bivens* claims. In *Reichle*, the Court explains at length how *Hartman* impacts First Amendment retaliation jurisprudence in the context of assessing a defense of qualified immunity. *See Reichle*, 566 U.S. at 662–66 (discussing "*Hartman's* impact on the Tenth Circuit's precedent governing retaliatory arrests" for the purpose of analyzing Secret Service agents' qualified immunity defense). Such a lengthy explanation by the Court would seem to be at odds with a background assumption that such claims did not exist.

[9] As all practitioners well know, *Iqbal* is considered a watershed case with respect to the general pleading standards outlined in Federal Rule of Civil Procedure 8(a)(2). *See, e.g.*, Karen Petroski, *Iqbal and Interpretation*, 39 FLA. ST. U. L. REV. 417, 417–18 (2012) ("As soon as it was issued in May 2009, the Supreme Court's decision in *Ashcroft v. Iqbal* was hailed as a potential watershed in American civil procedure.").

Circuit, and thus sweeping an untold number of *Bivens* cases involving alleged violations of constitutional rights off the dockets. Permeating Defendants' Motion is a criticism toward the courts for "implying" any damages remedy (even when "existing protections for the constitutional rights at issue offer incomplete relief") and hostility toward federal prisoners, which Defendants refer to as a "notoriously litigious population" (without respect to the underlying merit of that population's claims). Defs.' Mot. to Dismiss at 26, 21. Yet if the Supreme Court had intended to overturn decades of precedent and dramatically affect federal dockets across the country, it likely would have done so explicitly, and with a more impressive number of Justices speaking on the issue. Moreover, the Supreme Court itself has stated that it would be improper to over-read a decision like *Abbasi* beyond anything but "the narrowest grounds." *Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." (quotations and citations omitted)). And while *Abbasi* mentioned that expanding the scope of *Bivens* was now a "disfavored" judicial activity, *Abbasi*, 137 S.Ct. at 1857, it never once asserted that *Bivens* should be discarded altogether. Accordingly, by over-reading *Abbasi*, (in contravention of the Supreme Court's own guidance) to overturn decades of jurisprudence, the Motion runs roughshod over basic concepts of *stare decisis*. *See Michigan v. Bay Mills Indian Cmty.*, 134 S. Ct. 2024, 2036 (2014) (stating that *stare decisis* "is the preferred course for the interpretation of law because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions and contributes to the actual and perceived integrity of the judicial process").

**B.  Even If Mr. Baisi's Claims Were Considered Novel, They Should Still Proceed**

In order to dismiss a claim arising in new *Bivens* contexts, Defendants must show (1) that there is an alternative remedial structure in place to address Mr. Baisi's claims, or (2) that special factors

counsel hesitation in extending *Bivens* to Mr. Baisi's claims. *Engel*, 710 F.3d at 703–04. As to the first showing required, Defendants' Motion makes abundantly clear that no alternative remedial structures exist to address Mr. Baisi's claims. As to the special factors showing, Defendants' arguments all stem from a fundamental misunderstanding of Mr. Baisi's claims. Accordingly, Defendants fail to meet either of the two requirements to preclude Mr. Baisi's claims, so those claims should therefore be allowed to proceed.

### 1. There Are No Alternative Avenues Of Relief For Mr. Baisi

Despite Defendants' claims that there are alternative remedies for Mr. Baisi, in reality, none of their suggested "remedies" would redress the constitutional harms that Mr. Baisi suffered. Mr. Baisi seeks relief under *Bivens* because (1) the Defendants transferred him in retaliation for *Baisi I* (2) at a time when such transfer would at a minimum disrupt and/or delay his prescribed course of physical therapy treatment. Compl. ¶¶ 107–40. Mr. Baisi plainly does ***not*** challenge "BOP's decision to house federal detainees in contract facilities; [or] BOP's decision to award contracts to the 'GEO Group' . . . ." Defs.' Mot. to Dismiss at 26–27. Nor does Mr. Baisi challenge BOP's authority to use contract facilities generally, or to contract with the GEO Group in particular. In short, Mr. Baisi does not challenge any overarching policy or practice of BOP. Rather, Mr. Baisi requests relief for specific misconduct related to his transfer. *See, e.g.*, *Murphy v. Lane*, 833 F.2d 106, 108–09 (7th Cir. 1987) (addressing claims for retaliation and deliberate indifference in the context of a transfer).

Because Mr. Baisi is not challenging the "defective policies and regulations" of a particular agency, Defs.' Mot. to Dismiss at 27 (quoting *Vance v. Rumsfeld*, 701 F.3d 193, 205 (7th Cir. 2012)), many of the typical alternative avenues of relief against federal agencies and officials are foreclosed. For instance, the Administrative Procedures Act ("APA") allows individuals to bring suit against agency employees in their official capacities for injunctive relief, but it does not authorize money damages against individual employees. *See* 5 U.S.C. § 702 (authorizing "relief other than money damages").

Injunctive relief, even if ordered immediately, would do nothing for Mr. Baisi because he has already suffered a permanent disability and chronic shoulder pain due to Defendants' misconduct. Compl. ¶ 97. As courts have held, injunctions are only applicable for "current and ongoing harms," and the harms to Mr. Baisi are already complete. *See, e.g.*, *Traffic Tech, Inc. v. Krieter*, No. 14-CV-07528, 2015 WL 9259544, at *18 (N.D. Ill. Dec. 18, 2015); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) (noting that a plaintiff's "standing to seek the injunction requested depended on whether he was likely to suffer future injury [as a result of the unconstitutional conduct]"). Further, even if injunctive relief could somehow help Mr. Baisi, a separate statute governs housing decisions and transfers of prisoners, such that courts have considered those determinations exempt from the APA. *See* 18 U.S.C. §§ 3621–3626; Defs.' Mot. to Dismiss at 27.

In terms of money damages, Mr. Baisi similarly lacks avenues of relief outside of *Bivens*. The FTCA can provide for damages in certain circumstances, but the FTCA contains an exception for "discretionary function[s]." *Lipsey v. United States*, 879 F.3d 249, 255 (7th Cir. 2018). This exception broadly applies to any claim based on "a discretionary function or duty on the part of a federal agency or an employee of the Government, ***whether or not the discretion involved be abused***." 28 U.S.C. § 2680 (emphasis added), and the Seventh Circuit has applied it to cover all matters involving "placement and transfer decisions" in the prison context. *Lipsey*, 879 F.3d at 254–56. Similarly, while state tort law might provide relief against the GEO Facility and its staff for failing to provide adequate medical care to Mr. Baisi at the GEO Facility, Mr. Baisi's claims are focused on the violations of his constitutional rights undertaken by the Defendants while at MCC—i.e., his transfer during the course of his prescribed physical therapy sessions in contravention of his medical hold. For instance, Mr. Baisi cannot bring a claim against the GEO Facility and its staff for transferring him in retaliation for exercising his First Amendment rights, as Defendants took that action. Compl. ¶¶ 107–15. In this case, reliance on state tort

law would flout the deterrent purpose of *Bivens* actions recognized by the Supreme Court. *See Carlson*, 446 U.S. at 21 ("[T]he Bivens remedy, in addition to compensating victims, serves a deterrent purpose. . . . It is almost axiomatic that the threat of damages has a deterrent effect . . . surely particularly so when the individual official faces personal financial liability."). In fact, the Supreme Court has never held that potential remedies against a third party constitute an adequate alternative remedy to *Bivens* relief against government officials who misbehave, *see Beach v. Smith*, 150 F. Supp. 3d 41, 47 (D. Me. 2015), and has expressly foreclosed relief against private prison personnel under *Bivens* itself, *see, e.g.*, *Minneci*, 565 U.S. at 120 (declining to extend *Bivens* to create a remedy for Eighth Amendment violations by prison guards at a private prison).

Mr. Baisi thus has no alternative avenues of relief outside of *Bivens*. Instead of confronting the issue, however, the Defendants' Motion attempts to recast Mr. Baisi's allegations as "criticiz[ing] a range of official agency actions, including: BOP's decision to house federal detainees in contract facilities; BOP's decision to award contracts to the 'GEO Group'; and decisions . . . to house [Mr. Baisi] at [the GEO Facility]." Defs.' Mot. to Dismiss at 26–27 (footnotes omitted). This self-serving characterization of Mr. Baisi's claims allows Defendants to argue ostensibly that Mr. Baisi "may seek injunctive relief via an official-capacity claim" to challenge "official practice[s]" and "polic[ies]." Defs.' Mot. to Dismiss at 28. But as noted *supra*, Mr. Baisi does not challenge the BOP's authority to contract with the GEO Group or house prisoners at the GEO Facility.[10] Further, Defendants' emphasis on injunctive relief elides the fact that an injunction is a form of *prospective* relief, and could therefore never remedy a shoulder that has already been permanently damaged. *Traffic Tech, Inc.*, 2015 WL 9259544, at *18; *see also Lyons*, 461 U.S. at 105. For these reasons alone, virtually all of Defendants arguments fail. *See* Defs.'

---

[10] It is well-settled law that an otherwise lawful action, such as a transfer, can nevertheless be grounds for liability. *See Murphy*, 833 F.2d at 108–09 (concluding that plaintiff stated a claim for retaliatory transfer).

Mot. to Dismiss at 27–30 (suggesting that Mr. Baisi pursue injunctive relief through the APA, through an official capacity claim against BOP, and through habeas corpus, and similar prospective relief through complaints filed with the Department of Justice's Office of Inspector General and local medical licensing boards). Tellingly, even ignoring the substance of Mr. Baisi's allegations and assuming (incorrectly) that prospective relief would be sufficient, Defendants proposed alternatives are unworkable. For example, Defendants argue that Mr. Baisi can seek relief potentially through habeas corpus or the APA, but then relegate to a footnote and parenthetical the critical points that (1) the Seventh Circuit forbids the use of habeas corpus to challenge conditions of confinement, and, as referenced above, (2) any challenge to BOP's statutory authority regarding housing decisions has been exempted from the APA. *See* Defs.' Mot. to Dismiss at 27, 28 n. 41. Defendants even assert that, if all else fails, Mr. Baisi can "elect[] representatives whose opinions align with [his] own public-policy views." Defs.' Mot. to Dismiss at 30. Of course, as a non-U.S. citizen and federal prisoner, Mr. Baisi cannot vote.

Defendants also suggest—somewhat unusually—that administrative remedies created by the PLRA are available to Mr. Baisi as an alternative to a *Bivens* action. Defs.' Mot. to Dismiss at 29. First, as Defendants themselves acknowledge, Mr. Baisi "ha[s] already taken advantage of them," yet such efforts did nothing to address his grievances. Defs.' Mot. to Dismiss at 29. Such an argument contradicts Seventh Circuit law because *Bivens* actions are the *last* resort for a federal inmate and can only be brought *after* administrative remedies already have failed the inmate. *See Robinson v. U.S.,* 80 F. App'x. 494, 497 (7th Cir. 2003) (noting that "[b]efore bringing a *Bivens* lawsuit . . . a prisoner must first exhaust all available administrative remedies"). Mr. Baisi has already exhausted his administrative remedies and therefore they no longer exist as "alternative avenues of relief" that Mr. Baisi can pursue. Compl. ¶¶ 98–106.

Defendants may not need to "divine all conceivable alternatives to a *Bivens* action," but they must offer at least one. Defs.' Mot. to Dismiss at 30. All of Defendants' proffered alternatives fail to provide Mr. Baisi with relief from the appropriate individuals for the constitutional violations that he suffered. Having failed to demonstrate that any alternative avenues of relief are available to Mr. Baisi, his claims should be allowed to proceed.

### 2. *There Are No Special Factors that Would Counsel Hesitation*

Mr. Baisi's causes of action are, as explained *supra*, well-established and ordinary in the *Bivens* context. Regardless of whether First Amendment retaliation claims or Eighth Amendment deliberate indifference claims are now considered novel in the wake of *Abbasi*, the Seventh Circuit and its district courts, and, in certain cases, even the Supreme Court, have long considered such claims to be viable. *See, e.g.*, *Carlson*, 446 U.S. at 14 (recognizing a deliberate indifference claim in the *Bivens* context). In fact, they have been considered essential to the preservation of society's most fundamental constitutional rights. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." (citations omitted)). Any discussion of Congressional action or inaction—not to mention the parade of horribles about the "onslaught of litigation" that would occur if these claims continued to be recognized—must confront the fact that, for the last forty years, such claims largely have been considered valid. *See* Defs.' Mot. to Dismiss at 36; *Abbasi*, 137 S.Ct. at 1864–65 ("The Court has long made clear the standard for claims alleging failure to provide medical treatment to a prisoner—'deliberate indifference to serious medical needs.'").

Furthermore, in *Abbasi*, the Court noted that the relevant inquiry is whether "there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong. . . ." *Abbasi,* 137 S. Ct. at 1848. It is particularly important to note the context in which *Abbasi* took place. There, Congress had just passed the USA PATRIOT

Act, which explicitly dealt with national security concerns in the wake of the September 11, 2001 terrorist attacks, and which specifically granted government agencies additional authority to investigate and detain individuals suspected of being involved in those attacks. *See* 8 U.S.C. § 1226a (mandating that the Attorney General take into custody "terrorist aliens" and limiting judicial review for such detentions). In many ways, the *Abbasi* case represents the quintessential "special factors" case, since, as the Seventh Circuit has recognized, these factors are almost always "keyed to concerns about the special status of the . . . defendants or sensitivity to the nature of the governmental activity involved." *Engel*, 710 F.3d 698, 703 (7th Cir. 2013) (citations omitted). For instance, in *Malesko* and *Minneci*, the Court found that special factors precluded a *Bivens* action because the defendants were private actors. *See* 534 U.S. at 64; 565 U.S. at 120. Relatedly, in *United States v. Stanley,* 483 U.S. 669 (1987) and *Chappell v. Wallace,* 462 U.S. 296 (1983), the Court held that special factors counseled hesitation because both cases involved injuries arising out of or in the course of activity incident to military service. In *Abbasi*, those two concerns converged, as the case involved high-ranking policymaking officials who were charged with implementing a policy that related to exceptionally sensitive national security matters. Here, by contrast, a long line of *Bivens* cases—including the Supreme Court's decision in *Carlson*—make clear that federal prison officials and the administration of the federal prison system more generally do not present the type of special factors that would counsel hesitation. *See Engel,* 710 F.3d at 708 (finding a *Bivens* claims available where the case involved low-level federal law enforcement officials in a context that was "very much like the Fourth Amendment claim in *Bivens*").

In response to Mr. Baisi's straightforward and typical *Bivens* claims, Defendants attempt to flip the special factors inquiry on its head, by assuming that Congressional silence itself is a special factor that counsels hesitation in the *Bivens* context. *See* Defs.' Mot. to Dismiss at 31 (stating that "[a]t virtually every turn, Congress has declined to create the sort of individual-capacity damages remedies against

federal prison officials that [Mr. Baisi] seeks"). But if that were true, then *Bivens* would be a dead letter, since Congress has never opined directly on the efficacy or necessity of any *Bivens* remedy in the prison context. Conversely, in *Abbasi*, the Court chose to reaffirm the *Bivens* remedy, including its application against federal prison officials. *See Abbasi*, 137 S.Ct. at 1864–65 (applying *Carlson* to the plaintiffs' claims against a prison warden and noting that "[t]he Court has long made clear the standard for claims alleging failure to provide medical treatment to a prisoner—'deliberate indifference to serious medical needs'"); *see also Engel*, 710 F.3d at 708 ("[Defendant] has argued with great emphasis that the ground has shifted under *Bivens*, shaking its doctrinal foundations . . . . But shaky or no, *Bivens* remains the law, and we are not free to ignore it. As recently as last year, the Supreme Court reaffirmed the standards for resolving new *Bivens* questions."). Defendants should not be permitted to fill Congress' silence with their own words.

Even if it were proper to infer anything from Congress' failure to expressly provide a damages remedy for claims like Mr. Baisi's, none of the arguments put forth in the Motion would demonstrate that a special factor exists here. Defendants first note that Congress failed to "enact[] a federal counterpart" to § 1983 to provide relief against "federal prison officials." Defs. Mot. to Dismiss at 31. But it is "unthinkable" that the law would impose lesser constitutional duties on the federal government than it imposes on the states. *See Bolling*, 347 U.S. at 500 ("In view of our decision that the Constitution prohibits the states from maintaining racially segregated public schools, it would be unthinkable that the same Constitution would impose a lesser duty on the Federal Government."). Defendants also state that the Civil Rights of Institutionalized Persons Act ("CRIPA") did not create an "individual-capacity damages remed[y]" similar to *Bivens*, which makes sense considering that *Bivens* remedies already existed at the time that CRIPA was passed in 1980, and CRIPA's primary function was, as Defendants acknowledge, to "authoriz[e] litigation by the [DOJ] against *state* facilities," not federal facilities. *See*

25

Defs.' Mot. to Dismiss at 31 (emphasis added); 42 U.S.C. § 1997a. Given that § 1983 already had established an individual-capacity damages remedy against state and local officials, it is unremarkable that Congress did not create a cause of action that it had already created.[11]

Defendants also assert that the existence of the PLRA should counsel hesitation against extending a *Bivens* remedy to Mr. Baisi's retaliation claim, but the PLRA has existed for all *Bivens* cases in the Supreme Court since 1996 and has never been considered a special factor in those cases outside of the administrative exhaustion requirement. *See Abbasi,* 137 S.Ct. at 1865 (noting that the Court has held only that the PLRA's exhaustion requirement applied to *Bivens* and briefly noting in *dicta* that "[i]t could be argued that [the PLRA] suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment"). While Defendant's are correct that one goal of the PLRA was to limit frivolous prisoner litigation, nothing in the PLRA suggests that it was meant to preclude *Bivens* suits by prisoners altogether. Instead, the applicable section of the PLRA suggests otherwise, explaining that "***no action shall be brought*** with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility ***until such administrative remedies*** as are available ***have been exhausted***." 42 U.S.C. § 1997e (emphasis added). Defendants also point to the lack of any "standalone damages remedies against federal jailors" as reasoning that the passage of the PLRA "may be" indicative of the legislative branch's implicit determination to not allow damages as a remedy for prisoner mistreatment cases. Defs.' Mot. to Dismiss at 31. However, the PLRA was passed after the *Bivens* remedy was already well established.

Defendants propose various additional special factors, each of which represents nothing more than a complete misreading of Mr. Baisi's claims. Defendants point to Congressional "silence" in

---

[11] Defendants make similarly misguided arguments regarding the Prison Rape Elimination Act, which, as the name suggests, aimed at remedying misconduct by federal inmates, not federal prison officials. *See* 34 U.S.C. §§ 30301–30309; Defs.' Mot. to Dismiss at 31–32.

response to *Malesko* and *Minneci*—cases where the Supreme Court found that a prisoner at a federal facility operated by a ***private*** company could not bring a *Bivens* action for constitutional wrongs suffered at those private facilities. *See* 534 U.S. at 64; 565 U.S. at 120. Defendants also note that Congress has consistently discouraged inmates from challenging BOP's selection of contractors for private prisons and has generally deferred to the Attorney General for inmate transfers and designations, and day-to-day prison operations. Defs.' Mot. to Dismiss at 33. Defendants even suggest that Mr. Baisi's action would invite an "onslaught of litigation" regarding inmate housing decisions and private prisons. Defs.' Mot. to Dismiss at 36. Again, Mr. Baisi is not suing the GEO Group, he is not suing over his treatment at the GEO Facility, he is not suing to challenge his housing designation, the day-to-day operations of prisons, or even the BOP's selection of contractors for private prisons or inmate housing. Defendants' arguments are thus entirely inapposite.[12]

Ultimately, Defendants' position on Mr. Baisi's purported alternative remedies and their accompanying "special factors" analysis leads to a confusing and contradictory situation, in which federal prisoners would be left to face a "heads I win, tails you lose" framework. For instance, if Congress passes a law that gives inmates any sort of administrative recourse, Mr. Baisi's claims should be dismissed because he has a purportedly sufficient alternative process for relief, even if that process is incapable of remedying the harm. Conversely, if Congress passes a law that is in any way related to a state or federal prison system and does not create a process for inmates to seek relief, then Mr. Baisi's claims should be

---

[12] Defendants briefly assert that the involvement of MCC's medical personnel should counsel hesitation. Defendants point to Congress' enactment of 42 U.S.C. § 233(a), which "grants absolute immunity to [Public Health Service] officers and employees for actions arising out of the performance of medical or related functions within the scope of their employment," as evidence that Congress would counsel hesitation against extending a *Bivens* remedy to situations like Mr. Baisi's. Defs.' Mot. to Dismiss at 33–34. Defendants are correct that § 233(a) grants absolute immunity, but no Defendant in this case is a Public Health Service officer or employee within the meaning of § 233(a), so this is a moot point.

dismissed because Congress' "silence" implies they did not want prisoners to have any remedies. The Defendants' Motion serves only to highlight the underlying aim: to establish a situation in which federal inmates have no meaningful ability to seek redress against any individual federal official for the violation of inmates' Constitutional rights.

## III.   Qualified Immunity Does Not Support Dismissal of Any of Mr. Baisi's Claims

In the *Bivens* context, an invocation of qualified immunity will not defeat a claim so long as the complaint "contain[s] sufficient factual allegations to show that the defendant's conduct violated a constitutional right and that the right was clearly established at the time of the alleged violation." *Engel*, 710 F.3d at 708 (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Here, Mr. Baisi lays out factual allegations sufficient to support the claims that Defendants violated his clearly established rights.

The Complaint contains detailed allegations regarding Mr. Baisi's initial shoulder dislocation, his first lawsuit, his sudden transfer during the course of his treatment in violation of the medical hold, and the disruption and/or delay of his medical care. The Complaint also includes factual allegations regarding each Defendants' role in Mr. Baisi's transfer. *See, e.g.*, Compl. ¶¶ 62–63 (describing how Defendant Burke completed Mr. Baisi's transfer form even though he was on a medical hold while his treatment was ongoing). At all times, the law was clearly established that prisoners have a constitutional right to exercise their First Amendment rights without experiencing retaliation, and to receive adequate and timely medical care. *See, e.g.*, *Carlson*, 446 U.S. at 14 (recognizing a deliberate indifference claim in the *Bivens* context); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996) (recognizing a First Amendment retaliation claim). Defendants ignore these allegations and blithely assert that Mr. Baisi "fails to plausibly establish any violation at all . . . ." Defs.' Mot. to Dismiss at 41. Defendants further claim—incredibly—that even if Mr. Baisi sufficiently pleaded that Defendants violated his constitutional rights, those rights were not "clearly established" in July 2016. Each of these assertions run counter to the facts, common sense, and the law.

A.    **Mr. Baisi has Plausibly and Sufficiently Pled Claims for Retaliation, Deliberate Indifference, and Conspiracy**

At the motion to dismiss stage, a complaint must simply state a plausible claim to relief. *See Engel*, 710 F.3d at 709 (quoting *Twombly*, 550 U.S. at 570). While "[p]urely legal conclusions are insufficient," *id.* (citing *Iqbal*, 556 U.S. at 678), the Seventh Circuit has stated that a plaintiff must merely provide "enough details about the subject-matter of the case to present a story that holds together," *Swanson*, 614 F.3d at 404. In ruling on a motion to dismiss, "the court will ask itself *could* these things have happened, not *did* they happen." *Id.* (emphasis in original).

Defendants do not dispute the pleadings standard. Instead, Defendants ignore, distort, and mischaracterize Mr. Baisi's factual allegations. For instance, Defendants cite paragraph four of the Complaint as an example of a "bare allegation[] of conspiracy." Defs.' Mot. to Dismiss at 41 n. 54. Yet they quote the phrase "Defendants conspired to transfer [Mr. Baisi]" as if it were a standalone sentence, misleadingly omitting the full detail and context of the actual sentence, which occurs in the introduction of the Complaint, and which contains an additional clause illuminating that Defendants acted to "retaliat[e]" against Mr. Baisi "for pursuing his legally-protected right to petition the Court for redress for the unnecessary and wanton infliction of pain he suffered while in custody." Compl. ¶ 4. Similarly, Defendants argue that Mr. Baisi does not accuse any defendants of personal involvement in unconstitutional conduct, Defs.' Mot. to Dismiss at 41, which is simply false. The Complaint specifically alleges that Defendant Burke "completed an Inmate Intra-system Transfer form" in contravention of Mr. Baisi's medical hold, which required that he remain at MCC to complete additional physical therapy sessions. Compl. ¶¶ 63–68. The Complaint also includes allegations that Defendants Mohan, Ndife, and Owens ignored Mr. Baisi's messages, wherein he made clear:

> . . . that MCC personnel had not medically cleared him for the transfer; that the transfer to the GEO Facility would interfere with his ongoing physical therapy treatment plan, that the GEO Facility would not provide him physical therapy, and that without physical

therapy, he would suffer long-term consequences regarding his shoulder.

Compl. ¶ 69. Defendants do not even contest that Mr. Baisi's stated concerns all came to fruition. Defendants instead criticize Mr. Baisi for not alleging that Defendants Mohan, Ndife, and Owens "received, read, or acted on these messages," Defs.' Mot. to Dismiss at 41, failing to appreciate that Mr. Baisi must simply plead "sufficient factual allegations to permit the court to draw a reasonable inference [of the misconduct]." *Engel*, 710 F.3d at 709. At least at the motion to dismiss stage, it is reasonable for Mr. Baisi to infer that the messages he sent the Defendants were received and read. Moreover, Defendants make this factual argument after Mr. Baisi has, in good faith, agreed to defer discovery until the Defendants' Motion is resolved. *See* Defs.' Unopposed Mot. for Deferral of Answer Deadline and All Other Matters, ECF No. 16, Apr. 16, 2018. Without the benefit of such discovery, it is essentially impossible for Mr. Baisi to prove receipt of his messages. Defendants should not be permitted to use disputed facts as the basis for dismissal, thereby preventing the very discovery that would resolve those disputed issues of fact. *See also Banowitz v. State Exchange Bank*, 600 F. Supp. 1466, 1469 (N.D. Ill. 1985) (noting that, even under a *heightened* pleading standard, plaintiffs are not required to assert facts, "which, because no discovery has yet occurred, are in the exclusive possession of defendants").

Focusing on the allegations in the Complaint, and not the Defendants' mischaracterizations of those facts, Mr. Baisi's allegations provide a short and plain statement of his claims for retaliation, deliberate indifference, and conspiracy, thus entitling him to relief.

     1.   *Mr. Baisi Sufficiently and Plausibly Pled his Retaliation Claim By Setting Forth the Chronology of Events*

In order to succeed on a retaliation claim, a plaintiff must simply "allege a chronology of events from which retaliation may be inferred." *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994). That is, the plaintiff must show (1) that he engaged in conduct protected by the First Amendment; (2) that he suffered a deprivation that would likely deter First Amendment Activity in the future; and (3) that the protected

conduct was a "motivating factor" for the defendant's retaliatory action. *See Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). Courts have noted that "[t]he ultimate fact of retaliation for the exercise of constitutionally protected rights rarely can be supported with direct evidence of intent that can be pleaded in a complaint." *Rhoden v. Thompson*, No. 96-C-999, 1999 WL 182341, at *3 (N.D. Ill. Mar. 24, 1999). Accordingly, the chronology must simply "include an action that changed for the worse the conditions experienced by the plaintiff" in a manner that gives rise to a plausible inference of retaliation. *Id.* at *3– 4. The Seventh Circuit has concluded that retaliation was plausibly alleged where, for example, a prisoner was fired from several jobs after refusing to settle a prison lawsuit, *Harris v. Fleming*, 839 F.2d 1232 (7th Cir. 1988), and where an inmate was transferred after filing a lawsuit against the prison. *Murphy*, 833 F.2d at 109 n. 1.

Here, Mr. Baisi's complaint sufficiently pleads a chronology that makes retaliation a plausible inference:

- Mr. Baisi dislocated his shoulder, after which prison officials denied him medical treatment for nearly twelve hours, Compl. ¶¶ 12–37;
- The delay in treatment exacerbated Mr. Baisi's injury, and he eventually received surgery on his shoulder. He was placed on a medical hold until he healed properly and completed physical therapy, Compl. ¶¶ 38–42, 50–62;
- Mr. Baisi filed a deliberate indifference suit against various prison officials, including Defendants Ndife and Owens, based on his initial denial of care, Compl. ¶¶ 43–49;
- Approximately three weeks after undersigned counsel met with Mr. Baisi at MCC to discuss his case, and approximately one week after undersigned counsel appeared at a status hearing in that case, Mr. Baisi was abruptly transferred to the GEO Facility, Compl. ¶¶ 63–76; and
- This transfer contravened Mr. Baisi's medical hold, disrupted and/or delayed his ongoing treatment regime, and ultimately resulted in permanent damage to his shoulder, Compl. ¶¶ 76–82, 92–97.

Through this chronology, Mr. Baisi has plausibly alleged (1) that he engaged in conduct protected by the First Amendment by filing *Baisi I*; (2) that he suffered a deprivation in the form of disruption and/or delay of medical care that would likely deter First Amendment Activity in the future; and (3) that the

protected conduct was a "motivating factor" for the defendant's retaliatory action, as demonstrated by the close proximity between his meeting with counsel, counsel's appearance in the case, and his subsequent transfer. *Bridges*, 557 F.3d at 546.

In response, Defendants attempt to inject additional facts to undercut the reasonableness of Mr. Baisi's proffered inference as to retaliation. Defs.' Mot. to Dismiss at 43–44. But the Defendants' arguments present—at most—factual questions that could only be resolved in discovery. For instance, Defendants state that "no summonses ever issued, no defendant was ever served, no government attorney entered an appearance, and there was no discovery" in *Baisi I*. Defs.' Mot. to Dismiss at 4, 43. But their argument suggests too much. Defendants had no reason to know about the lawsuit until undersigned counsel met with Mr. Baisi at MCC and appeared at a status hearing, the latter of which occurred approximately one week before the transfer. Compl. ¶¶ 63–76. Similarly, Defendants allege that "[i]t simply makes no sense to assume that BOP personnel seeking to punish Plaintiff for filing *Baisi I* would provide appropriate care" and prescribe additional physical therapy sessions just before transferring him, Defs.' Mot. to Dismiss at 44; however, that argument ignores the possibility that the Defendants did not learn of the suit until undersigned counsel appeared at the prison and in court on behalf of Mr. Baisi. Defendants' other contention—that Mr. Baisi was already designated to be transferred before he arrived at MCC—is erroneous as a legal matter because an otherwise lawful transfer, if made for a retaliatory motive, is unlawful. *See, e.g.*, *Murphy*, 833 F.2d at 108–09; *Rhoden*, 1999 WL 182341, at *6.

At bottom, Mr. Baisi has alleged a chronology that gives rise to a plausible inference of retaliation. Mr. Baisi underwent shoulder surgery and was placed on a medical hold preventing any transfer while he healed from the surgery and completed physical therapy treatment. *E.g.*, Compl. ¶ 53. Soon after undersigned counsel became active in *Baisi I*, prison staff abruptly transferred Mr. Baisi in the middle of his treatment, knowing that the transfer would at a minimum be disruptive to his medical

care, and knowing that the GEO Group had a reputation "for providing inadequate access to medical care." Compl. ¶ 3.

2.  *Mr. Baisi's Complaint Adequately Alleges Deliberate Indifference And Conspiracy*

To plead deliberate indifference under the Eighth Amendment, a plaintiff must plausibly allege that a defendant knew about a substantial risk of harm to an inmate's health or security, yet chose to disregard the risk.  *See, e.g.*, *Rasho v. Elyea*, 856 F.3d 469, 476 (7th Cir. 2017).  Importantly, a plaintiff can state a claim for deliberate indifference by "alleging that a defendant delayed necessary treatment and as a result needlessly prolonged his pain." *Riley v. Kolitwenzew*, 526 F. App'x 653, 656 (7th Cir. 2013); *see also, Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (concluding that "[d]elay in treating a condition that is painful even if not life-threatening may well constitute deliberate indifference"); *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) (concluding that a delayed oral surgery that led to permanent structural damage could qualify as deliberate indifference).  Here, Mr. Baisi was placed on a medical hold.  Compl. ¶ 53.  His doctors and physical therapist noted the severity of his injury and prescribed weekly physical therapy for eight weeks.  Compl. ¶ 57.  The prison staff had full knowledge of Mr. Baisi's medical hold and treatment plan, yet abruptly scheduled him for transfer, wrote "none" for his travel restrictions, and failed to document that he was receiving physical therapy sessions. Compl. ¶ 65.  Mr. Baisi then explicitly raised his concerns to Defendants Mohan, Ndife, and Owens of the substantial risk that the transfer posed to his health and safety, including specifically that the transfer would disrupt or discontinue his therapy.  Compl. ¶ 69.  Nevertheless, MCC transferred Mr. Baisi to the GEO Facility, which, as he had feared, first disrupted and ultimately ended his medical care for the shoulder injury.  Compl. ¶¶ 76–82, 92–97.

The Defendants' argument focuses on the quality of care that Mr. Baisi received at MCC, which ignores the fact that Mr. Baisi alleges the transfer from MCC itself disrupted his treatment and, to date,

33

has delayed and/or denied him his treatment to the point that he now has a permanent disability; Mr. Baisi's current suit is not based on the adequacy of physical therapy that he was receiving at MCC. *Compare* Defs.' Mot. to Dismiss at 45 *with* Compl. ¶¶ 92–97. Defendants also "call into question" the seriousness of Mr. Baisi's shoulder injury, which—in addition to being wholly inappropriate at the pleadings stage—demonstrates a peculiar ignorance of the alleged facts, including *inter alia* that one of the Defendants themselves deemed it medically appropriate to order the very additional physical therapy sessions that Defendants now "call into question." Defs.' Mot. to Dismiss at 45.

Last, Defendants briefly attempt to argue that Mr. Baisi's conspiracy claims fail because he has not alleged sufficient facts for either retaliation or deliberate indifference, upon which the conspiracy claims depend. Defs.' Mot. to Dismiss at 46–47. As noted above, Mr. Baisi has sufficiently pled both retaliation and deliberate indifference. Insofar as Defendants allege that Mr. Baisi's Complaint provides only legal conclusions regarding the Defendants' meeting of the minds and overt acts, Defendants' own citations belie their point, *see id.* at 46 n. 61 (citing *Kunik v. Racine Cty., Wis.*, 946 F.2d 1574, 1580 (7th Cir. 1991) for the proposition that conspiracy claims require ***factual allegations suggesting*** a meeting of the minds occurred), and no one denies that the transfer itself – the critical overt act – actually occurred. Compl. ¶¶ 76–78. Moreover, even if Mr. Baisi's allegations do include certain legal conclusions, the Seventh Circuit has stated that "'legal conclusions can provide the framework of a complaint' so long as they are 'supported by factual allegations.'" *Engel*, 710 F.3d at, 709–10 (quoting *Iqbal*, 556 U.S. at 679). Mr. Baisi's highly detailed allegations regarding his shoulder injury, his first lawsuit, his sudden transfer in violation of the medical hold, and the disruption of his medical care, all sufficiently support his conspiracy claims. *See, e.g. Quinones*, 771 F.2d at 291 ("The very nature of a conspiracy obscures most, if not all, information about the alleged conspirators' agreement."); *Rubin*, 638 F.2d at 993 ("Conspiracies are ordinarily clandestine, so that proof of them will often be by purely circumstantial evidence.").

### B.    Qualified Immunity Does Not Apply To Any of Mr. Baisi's Claims

Mr. Baisi's retaliation, deliberate indifference, and conspiracy claims do not trigger qualified immunity. Qualified immunity protects government officials for certain actions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Behrens v. Pelletier*, 516 U.S. 299, 305 (1996) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). For a right to be "clearly established," that right must be "sufficiently particularized to put potential defendants on notice that the conduct is ***probably*** unlawful." *Sherman v. Four County Counseling Center*, 987 F.2d 397, 401 (7th Cir. 1993) (emphasis added). Within the Seventh Circuit, "it [is] clearly established law that it [constitutes] a violation of plaintiff's constitutional rights to take otherwise permissible action against a prisoner in retaliation for plaintiff's attempted exercise of his rights." *Rhoden*, 1999 WL 182341, at *6 (citing *Murphy*, 833 F.2d at 108; *Benson v. Cady*, 761 F.2d 335, 342 (7th Cir.1985)). It is also clearly established law that it violates a plaintiff's constitutional rights if a prison official is deliberately indifferent to a serious medical need, such that one court in the Seventh Circuit has even stated that deliberate indifference claims effectively "abrogate[] qualified immunity." *Keller*, 2017 WL 5713379, at *2 (citing *Harlow*, 457 U.S. at 818 and *Carlson*, 446 U.S. at 14).

Here, one of Mr. Baisi's allegations is that Defendants retaliated against him for filing *Baisi I* by transferring him during the course of his prescribed physical therapy sessions even though such a transfer would disrupt, delay, or terminate his therapy, and such transfer was prohibited at that time by virtue of his medical hold. Compl. ¶¶ 107–15, 129–40. Such conduct, if proven would be a direct violation of clearly established law. *Rasho*, 856 F.3d at 479 ("If [defendants] denied [plaintiff] . . . treatment to retaliate against him for his grievances, then their conduct violates clearly-established law under the Eighth Amendment."); *Rhoden*, 1999 WL 182341, at *6 ("Prior to 1994, it was clearly established law that it was a violation of plaintiff's constitutional rights to take otherwise permissible action against a prisoner in retaliation for plaintiff's attempted exercise of his rights." (citing *Murphy*, 833 F.2d at 108;

*Benson*, 761 F.2d at 342)).  In response, Defendants claim that Mr. Baisi has "no [clearly established right] to the housing designation of his choice."  Defs.' Mot. to Dismiss at 47–48.  But again, the Defendants may not defeat Mr. Baisi's claims simply by recasting them.  Mr. Baisi is alleging that his First Amendment rights were violated.  The fact that Mr. Baisi's claims relate to the "otherwise permissible action" of a transfer does not change the fact that the transfer is alleged to have been undertaken "in retaliation for [his] attempted exercise of his rights."  *Rhoden*, 1999 WL 182341, at *6.

Mr. Baisi also alleges that the Defendants were deliberately indifferent to his serious medical need—that is, they knew about a substantial risk of harm to his health and chose to disregard that risk when they transferred him in contravention of his medical hold.  In support of their assertion of qualified immunity, Defendants cite a now-overturned Seventh Circuit case that involved a prison physician's apparently good-faith determination that physical therapy would not benefit an inmate's ankle injury.  *See Petties v. Carter*, 795 F.3d 688, 692 (7th Cir. 2015).  The Motion merely sidesteps Mr. Baisi's actual allegations that the Defendants transferred him knowing full well that such a transfer would very likely disrupt, delay, or even terminate the physical therapy that he was already receiving at MCC.  Compl. ¶¶ 107–15, 129–40.  Such actions were clearly established as unlawful at the time, but the Defendants undertook them nevertheless.  *See Rasho*, 856 F.3d at 476; *Rhoden*, 1999 WL 182341, at *6.

Finally, Defendants argue that their liability for retaliation and deliberate indifference could not have been clearly established via Mr. Baisi's conspiracy counts because of the intracorporate conspiracy doctrine, which holds that "a conspiracy cannot exist solely between members of the same entity."  *Payton v. Rush-Presbyterian-St. Luke's Medical Center*, 184 F.3d 623, 632 (7th Cir. 1999).  But it is well-settled law that the intracorporate conspiracy doctrine is inapplicable where the relevant individuals are motivated by personal bias or some other personal motive "unconnected to the [entity's] official business."  *See Bd. of Tr.*, 4 F.3d at 470; *Baloun*, 2002 WL 31426647, at *12.  Here, Mr. Baisi has

specifically alleged that Defendants were motivated by a personal desire to retaliate against him for filing *Baisi I*. Compl. ¶¶ 120, 126 (stating that Defendants acted to deprive Mr. Baisi of his constitutional rights "solely out of personal bias and animus, such that the interests of the BOP played no part in the Defendants' decision to transfer Mr. Baisi"). A personal desire to retaliate against an inmate for their pending lawsuit is completely unconnected to the BOP's official business—to administer federal prison facilities throughout the country. *See Fairley v. Andrews*, 300 F. Supp. 2d 660, 669 (N.D. Ill. 2004) ("We fail to comprehend how agreeing to harass and retaliate against [plaintiffs] is within the scope of Defendants' employment."). The intracorporate conspiracy doctrine thus has no applicability in this case and cannot be the basis for dismissing any of Mr. Baisi's claims.

## IV.    **CONCLUSION**

For all of the reasons stated herein, Defendants' Motion should be denied in its entirety.

Dated:  August 10, 2018

Respectfully submitted,

ROPES & GRAY LLP

By:   /s/ *David W. Nordsieck*
          Jeffrey J. Bushofsky (IL Bar #6224593)
          Timothy R. Farrell (IL Bar #6303276)
          David W. Nordsieck (IL Bar #6306650)
          191 North Wacker Drive, 32nd Floor
          Chicago, IL 60606
          Tel:  (312) 845-1200
          Fax: (312) 845-5500
          jeffrey.bushofsky@ropesgray.com
          timothy.farrell@ropesgray.com
          david.nordsieck@ropesgray.com

*Attorneys for Plaintiff, Allen Jordan Baisi*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 10, 2018, I caused the foregoing **PLAINTIFF'S**

**OPPOSITION TO INDIVIDUAL FEDERAL DEFENDANTS' MOTION TO DISMISS**,

along with this Certificate of Service, to be electronically submitted with the clerk of the court

for the U.S. District Court, Northern District of Illinois, using the CM/ECF system of the court,

which sends notification of such filing via electronic mail to the following counsel of record:

Laura Katherine Smith
U.S. Department of Justice, Civil Division, Torts Branch
P.O. Box 7146
Ben Franklin Station
Washington, D.C. 20044
Laura.Smith2@usdoj.Gov

Donald R. Lorenzen
United States Attorney's Office (NDIL - Chicago)
219 South Dearborn Street
Chicago, IL 60604
Donald.Lorenzen@usdoj.Gov


Dated:  August 10, 2018                     /s/ *David W. Nordsieck*
                                            David W. Nordsieck
                                            Ropes & Gray LLP
                                            191 North Wacker Drive, 32rd Floor
                                            Chicago, IL 60606
                                            Tel:  (312) 845-1200
                                            Fax: (312) 845-5577
                                            david.nordsieck@ropesgray.com

                                            *Attorney for Plaintiff, Allen Jordan Baisi*