IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Allen Jordan Baisi, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 18-cv-58 |
| | ) |
| Colleen Elizabeth Burke, Brij Mohan, Zaida Iris Ndife, and Angela Maria Owens, | ) |
| | ) |
| Defendants. | ) |

Memorandum Opinion and Order

Plaintiff is a federal prisoner formerly incarcerated at the Metropolitan Correctional Center ("MCC") in Chicago, Illinois, and currently housed at the Great Plains Correctional Institution (the "GEO Facility") in Hinton, Oklahoma. In this action, plaintiff alleges that defendants violated his constitutional rights by transferring him from the MCC to the GEO Facility in retaliation for a previous lawsuit he filed against MCC employees and with deliberate indifference to his serious medical needs. Before me is defendants' motion to dismiss the complaint, which I grant for the following reasons.

The GEO Facility is operated by the GEO Group, Inc., a private contractor. Plaintiff alleges that in January of 2016, he dislocated

his shoulder in a fall, suffering a serious injury that he claims was exacerbated by the MCC staff's failure to treat him in a timely or appropriate manner. The following month, plaintiff filed a pro se action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), against six individuals, including defendants Angela Owens, the warden of the MCC, and Zaida Ndife, the facility's Health Administrator, alleging that their failure to provide him adequate medical care violated the Eighth Amendment. *See Baisi v. Cordova*, No. 16-CV-2661 (N.D. Ill. 2016) ("*Baisi I*"). After screening the complaint as required by 28 U.S.C §§1915(e)(2) and 1915A(a), Judge Gettleman dismissed defendants Owens and Ndife on the ground that plaintiff had not alleged their personal involvement in the asserted constitutional violation. *See Baisi I*, Order of 04/29/2016. The court allowed plaintiff's claims to proceed against several other individuals, none of whom is named here, and recruited counsel to represent plaintiff. Plaintiff later dismissed these claims voluntarily on September 29, 2016, before any summons had issued or any defendant had appeared in the case, because he determined that he had not exhausted his administrative remedies.

Meanwhile, plaintiff underwent surgery on his shoulder on May 26, 2016. Thereafter, defendant Brij Mohan, the MCC's Clinical Director, assessed plaintiff and recommended a six-week course of physical therapy to begin on June 14, 2016. Plaintiff's orthopedic surgeon likewise ordered a six-week course of physical therapy and

advised plaintiff that physical therapy was "a necessary and critical component" of his recovery. Defendant Mohan noted these recommendations when he reassessed plaintiff on June 8, 2016, and he ordered a follow-up visit with the orthopedic surgeon later that month. According to the complaint, Mohan informed plaintiff that he was on a "medical hold" until his physical therapy was completed, meaning that plaintiff could not be transferred to another facility during that time. Nevertheless, on July 14, 2016—after just three sessions of the prescribed physical therapy, defendant Colleen Burke, a nurse at the MCC, filled out a form "authorizing" plaintiff's transfer to the GEO Facility. Plaintiff claims that since his transfer to the GEO Facility, he has received no treatment for his shoulder and has had only a single physical therapy "consultation."

The instant *Bivens* action, filed in January of 2018, asserts that defendants violated the First and Eighth Amendments of the United States Constitution and conspired to violate his constitutional rights by intentionally failing to comply with his medical hold and by transferring him to the GEO Facility in retaliation for his filing of *Baisi I*. He claims that defendants knew that his transfer would interrupt his prescribed physical therapy and knew that he would not receive adequate medical care at the GEO Facility because: 1) on April 23, 2015, an audit by the Office of the Inspector General found inadequate staffing at the

3

health services unit at a facility operated by the GEO Group; 2) on January 28, 2016, an investigative exposé reported thirty-eight inmate deaths potentially linked to inadequate medical care at privately contracted prisons; and 3) on February 9, 2016, U.S. House Representative John Conyers, Jr., made remarks on the Congressional Record regarding immigrant deaths in private prisons. Compl. at ¶ 74.

Defendants have moved to dismiss the complaint in its entirety, arguing, *inter alia*, that plaintiff's First Amendment and conspiracy claims are foreclosed by *Ziglar v. Abassi*, 137 S. Ct. 1843 (2017), and that they are entitled to qualified immunity on all of plaintiff's asserted claims. Although the parties' extensive discussion of the first issue raises a host of complex and interesting questions on which reasonable minds may differ, this case does not compel their resolution because even assuming that such claims are cognizable in theory, plaintiff's complaint does not plausibly allege the violation of any clearly-established constitutional right. Accordingly, defendants are entitled to qualified immunity, and I dismiss the complaint on that basis.

Plaintiff's retaliation claims rest explicitly "[u]pon the inferences that may be drawn from the chronology of events," Compl. at ¶¶ 113-14, 117-20, 124-26, and 137. He places special emphasis on the fact that his transfer was ordered three weeks after he met with his attorney at the MCC, and a week after his attorney filed an appearance in *Baisi I*. The trouble with his retaliation theory,

4

however, is that the complaint does not allege that the individuals he sues here were even aware of *Baisi I* (recall that Owens and Ndife—the only defendants named in both cases—were dismissed at the screening stage prior to being served, and that the remaining defendants were likewise dismissed prior to receiving a summons), nor does the complaint suggest that defendants knew anything about the visit by plaintiff's attorney or the reasons for it. Without any factual basis in the complaint from which to infer that defendants knew about *Baisi I*, or had any reason to suspect that his lawyer's visit was related to the claims he asserted in that case, his theory that defendants conspired to transfer him to the GEO Facility in retaliation for that lawsuit does not raise his "right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Moreover, the complaint fails to allege any defendants' individual participation in the alleged constitutional violations. Indeed, Nurse Burke is the only defendant alleged to have played any role in effectuating his transfer to the GEO Facility, and her involvement appears to have been ministerial: Plaintiff states that Burke "completed an Inmate Intra-system Transfer form" in which she identified plaintiff's shoulder injury as a "current" health problem, and indicated that plaintiff should be given a two piece uniform "till full recovery of shoulder surgery" as well as prescription and over-the-counter strength ibuprofen. *Id.* at ¶ 65.

Plaintiff complains that Burke did not also include his physical therapy orders in these notations, but even if that omission was wrongful, there remains no basis for concluding that Burke had any control over the transfer itself, nor does it offer any reason to suspect that she acted with either a retaliatory motive or deliberate indifference to plaintiff's serious medical needs.

Meanwhile, plaintiff attributes no affirmative conduct at all to the remaining defendants (with the exception of Dr. Mohan, who he claims prescribed the physical therapy he says he needs), nor does he suggest that Dr. Mohan, Nurse Burke, or Health Administrator Ndife had any authority over his transfer to the GEO Facility. And while it may be reasonable to assume that Warden Owens had such authority, plaintiff does not allege that she knew anything about his medical needs prior to the date he claims the transfer was authorized on July 14, 2017. Indeed, he alleges only that *after* the transfer was initiated, he sent an urgent electronic message to Owens (as well as to Mohan and Ndife) on Saturday, July 16, 2016, expressing his concern that the transfer would interfere with his physical therapy and his request to remain at the MCC. But the mere fact that these missives went unanswered, or that the transfer was carried out as scheduled two days later despite plaintiff's concerns, does not, without more, suggest either a retaliatory motive or deliberate indifference to plaintiff's medical needs on the part of Warden Owens.

6

Indeed, deliberate indifference "requires that a defendant actually know about yet disregard a substantial risk of harm to an inmate's health or safety." *Rasho v. Elyea*, 856 F.3d 469, 476 (7th Cir. 2017). Yet, the only factual basis for plaintiff's claim that defendants knew about the risk that his physical therapy regime would be interrupted by a transfer to the GEO Facility is the trilogy of published materials he cites from 2015 and 2016, one of which found fault with health services staffing at "a GEO-run facility" (apparently not the GEO Facility to which plaintiff was transferred), and two of which reported an alarming number of inmate deaths in private prisons. While inadequate staffing and inmate deaths are certainly cause for concern, the publications as plaintiff describes them in his complaint are a decidedly slim reed on which to claim that Warden Owens actually knew that his transfer to the GEO Facility posed a substantial risk of harm to his health because it would interrupt his prescribed physical therapy.

Finally, even if plaintiff's allegations were sufficient to plead that any defendant was deliberately indifferent to his serious medical needs, he offers no authority to suggest that by transferring him to a private prison facility with potentially inferior health services, a reasonable government official would have known that he or she was violating clearly established law. Even at the motion to dismiss stage, "plaintiff carries the burden of defeating the qualified immunity defense." *Chasensky v. Walker*, 740 F.3d 1088,

7

1095 (7th Cir. 2014). To overcome defendants' assertion of qualified immunity, plaintiff must show that the constitutional right he seeks to vindicate was clearly established at the time of the conduct in question. This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz,* 533 U.S. 194, 201 (2001), receded from in part by *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Indeed, plaintiff acknowledges that the right he asserts "must be sufficiently particularized to put potential defendants on notice that their conduct is probably unlawful." *Sherman v. Four Cty. Counseling Ctr.*, 987 F.2d 397, 401 (7th Cir. 1993). Yet, his argument in this connection merely reiterates the legal standard that applies generally to such claims. *See* Opp. at 35 ("[i]t is also clearly established law that it violates a plaintiff's constitutional rights if a prison official is deliberately indifferent to a serious medical need."). Indeed, none of plaintiff's cited authorities suggests that a reasonable prison official would have known that by transferring plaintiff to the GEO Facility despite a medical hold for physical therapy, she was violating his rights under the Eighth Amendment.

For the foregoing reasons, defendants' motion is granted.

                              **ENTER ORDER:**

                              **Elaine E. Bucklo**
                              United States District Judge

Dated: January 9, 2019